## UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

COLLABORATION BETTERS
THE WORLD, INC., a Canadian
Corporation

      Plaintiff,

**JURY TRIAL DEMANDED**

vs.

THE HERTZ CORPORATION., a Delaware
Corporation

      Defendant.

_____/

## **COMPLAINT**

1. This is an action for damages exceeding $75,000, exclusive of attorney's fees, interest, and costs, arising out of Defendant The Hertz Corporation's ("Hertz") wrongful termination of a two-year Master Consulting Agreement entered into between it and Plaintiff Collaboration Betters The World, Inc., f/k/a Versett Inc., in September 2021, and Hertz's subsequent refusal to pay about $2 million for work Versett performed for Hertz in accordance with the terms of the agreement.

## **PARTIES**

2. Plaintiff Collaboration Betters The World, Inc., formerly known as Versett, Inc. and currently doing business as "Versett" (hereinafter, "Versett")[1], is a corporation

---

[1] Versett changed its name on January 1, 2023. Because the contracts at issue are between Versett and Hertz, and because the company was known as "Versett" during the course of the events described in the Complaint, the company will be referred to only as "Versett" throughout the remainder of the Complaint.

incorporated in Alberta, Canada, with offices in Canada and Europe. Versett is a global technology consulting firm with specialized teams that lead the product design and development process for high growth companies.

3.  Defendant Hertz is a Delaware corporation based in Estero, Florida. Hertz, under its own name and through subsidiary vehicle rental brands Dollar and Thrifty, is one of the largest worldwide vehicle rental companies. Hertz also operates the Firefly vehicle rental brand and the Hertz 24/7 car-sharing business.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332(a)(1) because there is complete diversity of citizenship between Versett and Hertz, and the matter in controversy in this civil action exceeds $75,000, exclusive of interest and costs.

5.  Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(1) because the Defendant's principal place of business is in this District, and pursuant to 28 U.S.C. 1391(b)(2) because Defendant transacts business in this state, and a substantial part of the events giving rise to this claim took part within this judicial district.

6.  The Court has personal jurisdiction over Hertz pursuant to section 48.193(2), Fla. Stat., because Hertz is engaged in substantial and not isolated activity within Florida, as its principal place of business is at 8501 Williams Road, Estero, Florida, 33928. Personal jurisdiction also exists pursuant to section 48.193(1)(a)(1) and (7) because the cause of action arises from Hertz's operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida, and from breaching a contract in Florida by failing to perform acts required by the contract to be performed there.

## STATEMENT OF FACTS

7.  Prior to September 2021, Versett worked alongside Hertz and certain of its stakeholders to understand the then-current state of Hertz's mobile application ecosystem, as well as its goals with respect thereto.

8.  For purposes hereof, Hertz's mobile application ecosystem includes fourteen (14) different applications – seven for iOS and seven for Android.

### *THE MASTER CONSULTING AGREEMENT*

9.  Thereafter, on or about September 10, 2021, Hertz and Versett entered into a Consulting Agreement, later referred to as the Master Consulting Agreement (hereinafter, the "MCA").

10. The purpose of the engagement was for Versett to provide a Mobile Ecosystem Review, recommend design and flow changes, and then work along-side Hertz to develop and implement those changes.

11. The initial term of the MCA was two years, beginning on September 10, 2021, and ending on September 9, 2023, unless extended by mutual agreement of the parties, or terminated as permitted by the MCA.

12. The MCA called for Versett to provide certain services, which would either be set forth in a Statement of Work (hereinafter, "SOW") or by some other agreement.

13. The MCA provided for Versett to invoice Hertz in accordance with schedules set forth in the SOW, or in accordance with procedures agreed to by the parties. Hertz was required to pay Versett within 75-days of an accurate invoice.

14. Pursuant to the MCA, among other things, an event of Default included the failure in any material respect to perform as required by the agreement, or failure in any material

respect to observe any covenant, condition, or agreement required by the MCA to be performed by either party and such failure is not cured within thirty (30) days after receipt of notice thereof.

15. If a Default took place by Versett under section 9(2) of the MCA and continued without cure, Hertz could terminate the MCA, in whole or in part.

16. Otherwise, Hertz, as its sole option, could terminate the MCA or any SOW at any time for any reason, upon thirty (30) days prior written notice to Versett.  At that point, Hertz would be required to remit payment to Versett for all properly authorized expenses up to the date of termination in accordance with the MCA.

## *FIRST STATEMENT OF WORK AND REQUEST FOR PROPOSAL*

17. The first Statement of Work ("SOW1") was entered into around the same time as the MCA and was for a project titled "Mobile Ecosystem Review."

18. SOW1 was effective as of September 13, 2021, specifically incorporated the September 10, 2021, MCA, and had a start date of September 30, 2021.

19. For SOW1, Hertz engaged Versett to review the experience of Hertz's then-current native iOS and Android mobile applications across Hertz's entire family of companies. Collectively, this was called Hertz's "Mobile App Ecosystem."

20. Specifically, Versett, through early conversations with Hertz's stakeholders, identified several specific areas of focus that required review.

21. As set forth in SOW1, Hertz intended to develop a strategy resulting from the audit to understand customers' future vision within Hertz's native app ecosystems.

22. Versett's focus under the SOW1 was to establish a "firm understanding of the current state of the Mobile App Ecosystem from a strategic, design and technical understanding of Hertz' capabilities and future roadmap through a customer-centric-lense."

23. The time for the work under the SOW1 was intended to be eight (8) weeks, which included time for multiple deliverables described in the SOW1, including a "complete end-to-end audit of the Mobile App Ecosystem and the key customer journeys."

24. Versett would also provide a final report of its recommendations, which would include user experience prototypes and technical recommendations to allow Hertz to take the next step.  This included a draft Request for Proposal ("RFP") to support delivering an end-to-end Mobile App.

25. Versett was to be compensated $250,000 for the review it conducted in SOW1 payable in two installments, to wit: (a) 50% payable upon receipt of the deliverables, and (b) 50% if Versett is not selected at the conclusion of the RFP process managed by Hertz.  However, the SOW1 provided that if Versett was accepted at the conclusion of the RFP process managed by Hertz to deliver the end-to-end mobile app, Versett agreed to apply the $125,000 previously paid in the form of a credit to Hertz.  *Id.*

26. On December 14, 2021, Versett submitted an invoice to Hertz for $250,000, which Hertz paid on January 26, 2022.

27. Versett fully performed its obligations under the SOW1, and Hertz selected Versett at the conclusion of the RFP process to develop Hertz's end-to-end Mobile App.

### ***SECOND STATEMENT OF WORK - DESIGN***

28. On December 20, 2021, Hertz and Versett entered into the "Statement of Work Number 2: Design," in accordance with the MCA (hereinafter, the "SOW2").

29. Hertz and Versett agreed that the additional work to be performed under the SOW2 will be performed commencing on January 1, 2022 and anticipated it would continue until February 28, 2022.

30. Under the SOW2, Versett functioned "as the strategic design and software engineering partner within the Hertz Product Team, leading the product design and implementation process for the Hertz Car Rental Apps on iOS and Android platforms."

31. Unlike the first SOW, SOW2's Fee Structure was a "Project Team Time and Material based contract." Rather than pay a flat rate, Hertz agreed to be invoiced on a time and materials basis based on the cost of the dedicated project team provided to Hertz, including resources requested by Hertz.

32. The Project Overview for the SOW2 contained three components: (1) Design, (2) Scoping, and (3) Development.

33. The primary aspect of the SOW2 was design. Versett's role was to "co-define a roadmap, business case and plan with Hertz … and update the interface by starting with a planning engagement."

34. Versett was to set forth as part of the SOW2 a roadmap containing "Key Project Deliverables," with a goal of bringing Release 1.0 to market with a design refresh and major usability enhancements.

35. By the end of the SOW2, Versett was to have developed a staffing plan and a new SOW defining milestones, functionality, timelines, team structure, and costs for Versett's development of an application meeting the described criteria.

36. Versett agreed to notify Hertz if the assumptions underlying the timeline turned out not to be correct, or if the scope of work changed, of a revised timeline for approval.

37. Versett's development responsibilities within the Hertz Product Team with respect to the SOW2 were limited. It was to develop a new login screen and begin developing a new user authentication method, a vehicle selection filter, and an interface to select a rental deadline.

38. Hertz acknowledged three specific risks with respect to the SOW2:

   a.  Access to Hertz's key stakeholders, which was needed by Versett;

   b.  Delayed project feedback by Hertz;

   c.  Missed technical delivery milestones by Hertz.

39. Versett fully performed its obligations under the SOW2.

40. By mid-February 2022, Versett and Hertz were working off a detailed Roadmap that covered development work for the first and second quarters of 2022 and included three release date targets: March 21, 2022, April 27, 2022, and May 24, 2022.

41. However, Versett encountered challenges during the SOW2 phase, including delayed feedback from Hertz (particularly on weekends), as well as challenges with Hertz's legacy code, which was left with "technical debt," which occurs when an easier but limited solution to a problem is chosen over a better approach that would take longer.

42. Nevertheless, by February 28, 2022, Versett and Hertz had a roadmap in place, a project plan for development, and Versett had in process a draft Scope of Work for the next phase.

### ***ROADMAP AND NEXT SCOPE OF WORK***

43. On or about March 3 and 4, 2022, Versett met with Hertz in Estero, Florida, to discuss the Roadmap and attempt to work out challenges going forward.

44. Among those challenges was meeting the March 21, 2022, release date from the roadmap, in part due to delays with the iOS version of the app caused by delayed feedback from Hertz.

45. Following that meeting, on March 6, 2022, Mr. Richard Kim, Versett's Technology Leader, shared via email Versett's plan to meet the March 21, 2022, release date. In that email, Mr. Kim noted that during the previous weekend, Versett's team was not getting timely code approval and support from Hertz, further putting the deadline for the iOS version of the app in jeopardy.

46. Nevertheless, Mr. Kim set forth a plan to meet the March 21, 2022, release date, which provided for Versett's continuing to work weekends and the timely receipt of build and code approval support from Hertz over the weekend, with responses coming within 30 minutes.

47. Also on March 6, 2022, Mr. Bill Murphy from Hertz sent an email to the Versett/Hertz team outlining action plans agreed upon during the March 3 and 4 meetings. This included Versett providing additional personnel on a short time frame and several other points aimed at helping the Hertz and Versett development teams work together toward reaching the aggressive goals set forth, given the challenges faced by Hertz's existing codebase and bottlenecks caused by Hertz's delays in providing timely build and code approval support.

48. Versett continued to work toward meeting the March 21, 2022, release date over the coming days. However, it still was not receiving timely responses from Hertz, and did not receive an expected iOS build from Hertz until March 9, 2022. This was enough to delay the iOS release by a week.

49. Thus, by March 9, 2022, it was apparent to Versett that Hertz's team was not meeting the expectations set forth during the March 3-4 meeting and further detailed in the March 6, 2022, emails. Accordingly, Versett concluded that the March 21, 2022, deadline was unrealistic and that a revised timeline was necessary, as provided for in section 5.2 of the SOW2.

50. During the evening of March 9, 2022, Ms. Jane Chae, Versett's Head of Technology, sent an email setting forth a proposed revised timetable with a target release date of April 4, 2022.

51. On March 10, 2022, Hertz's Ms. Georgina ("Gina") O'Leary, rejected Versett's proposed revised plan and asked for Ms. Chae to provide a revised plan that would allow for a March release, and suggested that if Versett were unable to meet that delivery timetable, Versett could be re-assigned to something later in the roadmap, and a Hertz team would take over the development needed for the upcoming release.

52. Also on March 10, 2022, Mr. Bill Murphy requested an update from Versett on adding additional developers to the team, which Mr. Murphy described as "critical." Versett responded that it was adding three experienced developers to the project and was in the process of finalizing the timing of getting them off their current engagements and on to the project as soon as possible.

53. On March 11, 2022, Mr. Bill Murphy informed Ms. O'Leary and Versett that the plan was to stay the course, double down efforts, and work weekends to meet the objective of a March release.

54. Versett's team did just that. It put in the effort by continuing to work weekends, provided additional staffing that was requested, and ultimately was able to complete development

on target for a March release, with only the iOS version of the app held up past March 31, 2022, awaiting review from Hertz.

### ***HERTZ WRONGFULLY TERMINATES THE MCA***

55. On April 1, 2022, inexplicably, and without notice in violation of the MCA, Hertz terminated Versett.

56. At no time prior to April 1, 2022, had Hertz provided any notice whatsoever that it had any intent to terminate the MCA.

57. The termination truly came out of the blue – Versett had hired engineers to work on the project, at Hertz's request, as recently as March 28, 2022.

58. On April 4, 2022, because it believed Hertz was wrong to terminate the MCA, Versett reluctantly stopped all work at Hertz's demand.

### ***HERTZ REFUSES TO PAY FOR VERSETT'S WORK***

59. On January 31, 2022, Versett submitted an accurate invoice for $562,850, representing work it performed in January, as well as a small amount of work performed in December 2021. Hertz never paid this invoice.

60. On March 1, 2022, Versett submitted an accurate invoice for $618,000, representing work it performed in February. Hertz never paid this invoice.

61. On April 5, 2022, Versett submitted an accurate invoice for $981,050, representing work it performed in March. Hertz never paid this invoice.

62. Also on April 5, 2022, Versett submitted an accurate invoice of $8032.04 for its expenses. Hertz never paid this invoice.

63. The total amount of the outstanding, unpaid invoices is $2,169,932.04. Because Versett agreed to credit $250,000 of the amount it was paid under the SOW1, Hertz owes Versett

$$1,919,932.04. Each of the invoices is past-due by more than 75-days, causing Hertz to be in material breach of the MCA.

64. Versett reached out to Hertz in April 2022 to determine the status of its unpaid invoices.

65. On April 26, 2022, Hertz's Bill Murphy responded to Versett via email, and explained that Hertz would not pay the full amount invoiced by Versett, but instead would reduce the amount owed by $1,501,190, due to what Mr. Murphy described as a "methodical adjustment … to reflect a Low Quality Factor." Neither Mr. Murphy nor anyone else at Hertz suggested that Versett's invoices were inaccurate in any way.

66. Simply put, nothing in the MCA, SOW1, SOW2, or any other written agreement between Hertz or Versett permits Hertz to unilaterally reduce the amount it agreed to pay Versett by any amount, and especially by a so-called "Low Quality Factor" that is not defined anywhere in the agreements.

67. Indeed, SOW2 specifically states it is a time and materials-based contract, and that Versett will perform by providing a dedicated project team available to Hertz.

68. If Hertz had any issue with the quality of Versett's work, the agreements required Hertz to provide Versett with notice and opportunity to cure, which Hertz never did.

69. Instead, Hertz simply chose not to pay for the work, as it was obligated to do so.

70. Indeed, upon information and belief, Hertz is using the code Versett developed in both the Android and iOS versions of the app, as it is evident from Hertz's use of the login screen and design flows.

**COUNT I**
**BREACH OF CONTRACT**
**(FAILURE TO PAY INVOICES)**

71. Versett incorporates paragraphs 1-70 above.

72. Versett and Hertz had a valid and enforceable contract, with its terms set forth by the MCA, subsequent SOWs, specifically SOW1 and SOW2, as well as subsequent written and verbal modifications by the parties later ratified in writing and by conduct.

73. Pursuant to the terms of the MCA, Versett was to submit invoices to Hertz, and Hertz was required to pay them within 75 days.

74. As set forth above, Versett submitted accurate invoices to Hertz on January 31, 2022, March 1, 2022, and April 5, 2022, for work performed and expenses incurred, totaling $2,169,932.04.

75. Hertz failed to pay any of these invoices within the 75-day time period provided by the MCA.

76. Because Hertz is entitled to a $250,000 credit pursuant to SOW1, Hertz owes Versett a total of $1,919,932.04.

77. On October 19, 2022, Versett's counsel sent a letter to Hertz's counsel demanding payment of the money owed to Versett.

78. As of the date of this Complaint, Hertz has not paid anything to Versett pursuant to the invoices.

79. Accordingly, Hertz is in material breach of the MCA and SOW2 by failing to pay Versett for the work it performed and properly invoiced, as well as for expenses it incurred and properly invoiced.

80. As a result of Hertz's material breach, Versett has been damaged by $1,919,932.04, plus interest and the costs of bringing this action.

**WHEREFORE**, Versett demands that the Court order Hertz to pay Versett $1,919,932.04 in damages, plus pre-judgment interest, Versett's costs in bringing this action, and any other relief the Court deems necessary and just.

## COUNT II
## BREACH OF CONTRACT
## (WRONGFUL TERMINATION)

81. Versett incorporates paragraphs 1 - 70 above.

82. The MCA constitutes a valid, enforceable contract between the parties and had a set term of two years.

83. The MCA had a termination provision, which allowed Hertz to terminate the agreement or any SOW at its sole option upon 30 days prior written notice, and Versett to terminate the agreement or any SOW at its sole option upon 90 days prior written notice.

84. The termination provision provides that, upon receipt of a notice of termination, Versett must deliver to Hertz confidential materials and work in progress, which Hertz will remit payment for in accordance with the MCA and as set forth by the work schedule in any SOW.

85. Paragraph 16 of the MCA also provided that either party may terminate upon material breach by the other party if that material breach is not cured within the time frame provided.

86. Hertz did not provide Versett with any notice that it was in material breach of any provision of any agreement, and thus no opportunity to cure any purported breach.

87. On April 1, 2022, without any prior written notice, Hertz terminated the MCA. This was despite the fact that Versett had a large team actively working on the project's Roadmap, including dozens of engineers who could not be readily redeployed at a moment's notice.

88. Hertz knew that Versett had dozens of engineers actively working on the project, and thus it was reasonably foreseeable to Hertz that Versett would suffer damages if the MCA were terminated without notice.

89. Hertz nevertheless terminated the MCA without notice, and, as a direct a proximate result of Hertz's wrongful termination of the MCA, Versett has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Versett demands that the Court order Hertz to pay Versett compensatory damages in an amount to be determined at trial, plus pre-judgment interest, Versett's costs in bringing this action, and any other relief the Court deems necessary and just.

## COUNT III – UNJUST ENRICHMENT
### (In the Alternative)

90. Versett incorporates paragraphs 1 to 70 above.

91. Versett conferred numerous valuable benefits upon Hertz during the course of its engagement, until it was wrongfully terminated on April 1, 2022.

92. Those benefits included the deliverables in SOW2, as well as additional work performed by Versett consistent with the Roadmap that was generated as part of SOW2.

93. Hertz voluntarily accepted those benefits, both before and after it wrongfully terminated Versett.

94. Upon information and belief, Hertz merged Versett's code into its App, as the login screen and design flows are consistent with the work Versett delivered to Hertz.

14

95. Hertz did not pay for or otherwise offer Versett adequate compensation for the benefits conferred. Instead, it wrongfully terminated Versett.

96. Under these circumstances, it would be inequitable for Hertz to retain those benefits without compensating Versett for them.

WHEREFORE, Versett demands that the Court order Hertz to compensate Versett for the benefits it conferred in an amount to be determined at trial, plus pre-judgment interest, Versett's costs in bringing this action, and any other relief the Court deems necessary and just.

## JURY TRIAL DEMAND

Versett demands a trial by jury for all issues so triable.

Dated:  February 27, 2023

Respectfully submitted,

Waserstein & Nuñez, PLLC
*Attorneys for Plaintiff Versett, Inc.*
1124 Kane Concourse
Bay Harbor, FL 33154
Tel.:  (305) 563-1011

By:      /s/ Carlos Nunez-Vivas
Carlos Nunez-Vivas, Esq.
Florida Bar No. 128181
carlos@wnlawgroup.com